See also    F.Supp.

**FORT WASHINGTON RESOURCES, INC., Plaintiff,**

v.

**Robert H. TANNEN, Ph.D., Defendant/counterclaimant,**

v.

**Kirk PENDLETON, Counterclaim Defendant,**

and

**Fort Washington Resources, Inc., Plaintiff/counterclaim Defendant.**

No. 93–CV–2415.

United States District Court, E.D. Pennsylvania.

Feb. 23, 1994.

566

Allan C. Preziosi, Lightman & Associates, Philadelphia, PA, for Fort Washington, Kirk Pendleton.

Laurence I. Tomar, Elizabeth A. Hunter, Law Office of Laurence I. Tomar, Yardley, PA, for Robert H. Tannen.

*Memorandum & Order*

JOYNER, District Judge.

This matter arises from defendant's motion to amend his counterclaims.[1] Defendant originally filed an answer and counterclaim in response to plaintiff's complaint stating claims against plaintiff Fort Washington and counterclaim defendant Kirk Pendleton for libel and slander, negligent misrepresentation, fraudulent misrepresentation and breach of contract. By his motion, defendant now seeks to add a counterclaim to "pierce the corporate veil" in order to hold counterclaim defendant Kirk Pendleton personally liable for the above causes of action. Defendant also seeks to amend his claims for fraudulent and negligent misrepresentation by adding a paragraph which states that Kirk Pendleton knew about a certain filing deadline for a new drug application with the FDA, and that he intentionally misrepresen-

ted such fact when he and defendant entered into negotiations for defendant's employment.

Plaintiff and Kirk Pendleton oppose defendant's motion for several reasons. First, they state that defendant has failed to satisfy his burden under Rule 13(f) of the Federal Rules of Civil Procedure which governs whether or not a party can add a counterclaim. Second, they argue that allowing such amendments would prejudice them. Third, they argue that defendant's claim of piercing the corporate veil is inadequate for purposes of Pennsylvania law because there is no evidence that plaintiff is a sham corporation and because defendant's claim fails to state a claim upon which relief can be granted.

Rule 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). Additionally, Rule 15(a) provides that leave to amend a pleading shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). In determining whether to allow the amendment, courts must consider whether the pleader has acted in good faith and will not cause any undue delay in filing the counterclaim, whether there is any undue prejudice to the non-moving party and whether the claim is meritorious. *Bryant v. Clark*, Civ. A. No. 91–4352, 1991 WL 212092, at 2 (E.D.Pa. Oct. 15, 1991); *Perfect Plastics Indus. v. Cars & Concepts*, 758 F.Supp. 1080, 1082 (W.D.Pa. 1991). Whether or not the claim is meritorious is determined by applying the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Northwestern Nat'l Ins. Co. v. Alberts*, 717 F.Supp. 148, 153 (S.D.N.Y.1989). In so doing, courts construe the allegations of the counterclaim in a light most favorable to the defendant. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). Moreover, leave to amend should only be denied if "it appears beyond doubt that the defendants can prove no set of facts supporting their claim that

1. Although defendant's motion is entitled "second motion to amend complaint," to avoid any confusion, the motion is referring to his counterclaims and not plaintiff's complaint.

entitles them to relief." *Northwestern*, 717 F.Supp. at 153 (citations omitted).

We first address plaintiff and Kirk Pendleton's argument that defendant's claim to pierce the corporate veil fails to state a claim for which relief can be granted. In essence, they are arguing that defendant's claim is meritless because defendant does not allege that there was any fraud or crime being perpetrated on plaintiff's creditors and therefore defendant's claim is insufficient under Pennsylvania law. They also argue that the evidence demonstrates that plaintiff was not a sham corporation, rather, that Mr. Pendleton at all times acted to further the goals of plaintiff at his own personal cost.

The act of piercing the corporate veil is an extraordinary remedy and will only be employed in exceptional circumstances. *Village at Camelback Property Owners Ass'n Inc. v. Carr*, 371 Pa.Super. 452, 461, 538 A.2d 528, 532–33 (1988), *allocatur granted*, 519 Pa. 668, 548 A.2d 257 (1988). Nonetheless, the courts will pierce the corporate veil "whenever justice or public policy require and where rights or innocent parties are not prejudiced nor the theory of corporate entity rendered useless. . . . Whenever one in control of a corporation uses the corporate assets, to further his or her own personal interests, the fiction [that a corporation is a legal entity separate from its shareholders] may properly be disregarded." *Lynch v. Janson*, Civ.A. No. 90–5063, 1990 WL 188926, at 7 (E.D.Pa. Nov. 28, 1990) (citations omitted); *Village at Camelback Property Owners Ass'n Inc. v. Carr*, 371 Pa.Super. 452, 461, 538 A.2d 528, 532–33 (1988). Courts look at several factors to determine whether or not to pierce the corporate veil: 1) whether corporate formalities were observed and corporate records were kept; 2) whether other corporate officers and directors existed other than the shareholder; and 3) whether the dominant shareholder has used the assets of the corporation for his own personal use. *Lynch*, 1990 WL 188926, at 7; *Carr*, 371 Pa.Super. at 461, 538 A.2d at 533. Finally, defendant need not assert that the corporation is being used to perpetrate fraud or a crime, the corporate veil can still be pierced under appropriate circumstances where defendant alleges that it is necessary to avoid injustice. *Carr*, 371 Pa.Super. at 462, 538 A.2d at 533 (citing *Rinck v. Rinck*,

363 Pa.Super. 593, 597, 526 A.2d 1221, 1223 (1987)).

Looking at all of defendant's counterclaims as a whole, we find that defendant has not sufficiently plead a cause of action for piercing the corporate veil, and as such, fails to state a meritorious claim. In so finding, we are mindful of the fact that we are to construe the allegations as true, and are only to deny the motion to amend if it appears beyond doubt that defendant has alleged no set of facts which would entitle him to relief. Under this standard, defendant has not adequately stated a claim for piercing the corporate veil.

Defendant's proposed counterclaim states as follows:

1. Defendant/counterclaimant adopts and incorporates each and every averment of his Answer to Complaint and including Counterclaims, Counts I through IV as though set forth herein at length.

2. Kirk Pendleton was acting CEO of FWR during the time period complained.

3. During such time period, FWR/KP did not keep formal corporate records and did not hold a meeting to elect a Board of Directors.

4. During the time period of RHT's dismissal from the project, and at earlier points in time, FWR was unable to meet their debts as they became due. KP also omitted to inform defendant that FAR [sic] had a history of not meeting debts when due. Such omission is material and caused defendant to believe that FAR [sic] had significant assets.

5. It is believed that FAR [sic] was capitalized primarily with funds provided by Kirk Pendleton.

6. FWR is really a facade for the operations of Kirk Pendleton.

Wherefore, defendant requests that Kirk Pendleton be held individually liable for his: (1) Breach of the Contract with defendant; (2) For his negligence [sic] misrepresentation; (3) For his fraudulent misrepresentations; and, (4) For his liable [sic] and slanderous statements against defendant.

While defendant alleges some facts which are necessary in order to state a claim for

piercing the corporate veil, the majority of facts alleged are vague and do not meet the burden in order to show that the corporate veil should be pierced. For instance, defendant alleges that formal records were not kept. He then states there was no meeting held to elect a board of directors. Under a very liberal reading, this statement could be implied to mean that there were no other directors other than Mr. Pendleton. However, it is not clearly stated. Defendant then fails to allege any sort of fraud or injustice necessary to state a claim for piercing the corporate veil. As previously stated, allegations of fraud need not be present as long as it is alleged that piercing the corporate veil is necessary to avoid an injustice. However, defendant alleges neither of these. Further, the counterclaim does not adequately indicate on what basis defendant intends to have the corporate veil pierced. While defendant alleges that plaintiff is merely a facade for the operations of Kirk Pendleton, that alone is not enough to state a claim. *See Laborers Pension Fund v. Bakke Construction Co.*, No. 87 C 963, 1987 WL 19818, at 1–2, 1987 U.S.Dist. LEXIS 10509, at 3–5 (N.D.Ill. Nov. 10, 1987) (where court held defendant's allegations that "Arne has used Bakke merely as an instrument to carry out his personal business activities and to protect him from individual liability for his actions" was insufficient to state a claim because "the desire to avoid personal liability . . . is the usual reason for incorporation" and "[m]ore than this is required to justify piercing the corporate veil.").

Our holding is consistent with cases in this Circuit and others that have considered whether allegations are sufficient to state a claim for piercing the corporate veil. For instance, in *Allied Corp. v. Frola*, 701 F.Supp. 1084 (D.N.J.1988), the court held that defendant's allegations were insufficient to survive a 12(b)(6) motion because the complaint contained no allegations of illegality or injustice. Rather, all that was alleged was that "Becker created and used [the corporations] as corporate shells in an effort to shield Becker from accountability and responsibility for [the corporation's] acts or omissions at the site." *Id.* at 1089. Likewise, in *Lynch v. Janson*, Civ.A. No. 90–5063, 1990 WL 188926 (E.D.Pa. Nov. 28, 1990), the court also held that plaintiff's allegations did not survive a motion to dismiss where she failed to allege any facts showing an abuse of the corporate identity. Plaintiff had alleged that defendant had not invested any of his owns funds into the corporation and that plaintiff was the primary source of funding the corporation. In finding this was inadequate to state a claim, the court stated that "[t]he contention is not that the corporation is under-capitalized, but that the capitalization plan is deficient . . . A sham corporation that is grossly under-capitalized would shield a defendant shareholder from liability and offer no recourse for potential plaintiffs. This would be an abuse of the corporate legal identity." *Id.* at 7. *See also Laborers Pension*, 1987 WL 19818, at 2, 1987 U.S. Dist. LEXIS 10509, at 5 (stating "Plaintiffs do not allege any facts to suggest commingling of bank accounts, undercapitalization, or diversion of funds.").

In cases where the claims were sufficient, the allegations of injustice and abuse were clearly stated. For instance, in *River Road Dev. Corp. v. Carlson Corp.*, CIV. A. No. 89–7037, 1990 WL 6092 (E.D.Pa. Jan. 25, 1990), the court held that defendant's counterclaim survived a 12(b)(6) motion where he alleged, in part, that "respecting the separate legal identities of Counterclaim Defendants would work an injustice and an actual or constructive fraud upon Carlson." *Id.* at 3. He further alleged that the corporation "has been and is now inadequately capitalized to support a venture involving the costs and risks of this project." *Id.* at 4. Finally, defendant also alleged other explicit facts showing why the corporate veil should be pierced. Additionally, in *Village at Camelback Prop. Owners Ass'n Inc. v. Carr*, 371 Pa.Super. 452, 538 A.2d 528 (1988), *allocatur granted*, 519 Pa. 668, 548 A.2d 257 (1988), the court held that plaintiff's claim was adequate where it alleged that shielding defendant from individual liability under the guise of the corporate facade would be inequitable, and further alleged that the corporation was insufficiently capitalized from the outset, that there was an intermingling of funds between defendant and the corporations, that there were no functioning officers and directors, that corporate formalities were not observed,

that corporate dividends were not paid and that defendant always held himself out as conducting the business affairs of the corporation individually and that he did not use the corporate name or state he was conducting such business as an officer or employee of the corporation. *Id.* at 465, 538 A.2d at 535.

As the cases demonstrate, defendant's allegations in this case are not enough to state a claim for piercing the corporate veil. As previously stated, there is no specific allegation of injustice alleged by defendant. Moreover, the fact that defendant alleges that plaintiff is merely a facade for Mr. Pendleton's activities is not sufficient. Even with a very liberal reading of the allegations, there is still no type of injustice or abuse that can be implied from the allegations. While defendant alleges that plaintiff did not pay its debts as they became due, that he thought plaintiff had significant assets, and that plaintiff was primarily capitalized by Kirk Pendleton's assets, this does not mean that the corporation was undercapitalized or being abused. Defendant does not state that plaintiff lacked any money, just that debts were not paid on time. Nor does he state that debts were not paid at all. While defendant may have *thought* plaintiff had significant assets, that has no bearing on whether or not it was undercapitalized. Moreover, even if the opposite turned out to be true, there is a difference between not having significant assets and being grossly undercapitalized. At the most, defendant's allegations are similar to those in *Lynch* where the allegations only amounted to the claim that the capitalization plan was deficient, but not grossly undercapitalized. Without any other facts, that is all that can be gleaned from defendant's allegations.

Finally, defendant does not suggest that Mr. Pendleton used the corporate assets as his own, rather, he suggests that Mr. Pendleton primarily financed the corporation. We fail to see how this amounts to any sort of injustice that warrants the extraordinary act of piercing the corporate veil. As such, because defendant fails to state adequate facts to survive a 12(b)(6) motion, defendant has not plead a meritorious claim, and his motion to add a counterclaim for piercing the corporate veil must be denied.

With regard to the amendment to the fraudulent and negligent misrepresentation claims, however, we see no reason why defendant should not be permitted to amend his claims in the manner requested in his motion.[2] Plaintiff and Mr. Pendleton argue that defendant's motion should be denied because defendant has failed to explain why the counterclaim must now be amended, and suggest that defendant has intentionally delayed these proceedings by filing this motion. They further argue that they will be prejudiced by having to conduct additional discovery after the time for discovery has ended.

We do not find there has been any sort of undue delay in this case or that there will be any prejudice to the parties. Defendant states in his motion that this information for the amendment was discovered during the discovery process and further, that the parties would not be prejudiced by this amendment. Indeed, discovery in this case ended on November 10, 1993 and defendant filed his motion to amend only one month after that date. This hardly constitutes undue delay. Moreover, given that the amendment to the counterclaims concerns knowledge held by Kirk Pendleton, or the lack thereof, there is no real need for additional discovery. As such, the amendment will not cause a delay in these proceedings, nor will the parties be prejudiced by having to conduct additional discovery. As such, defendant is allowed to amend his counterclaims of fraudulent and negligent misrepresentation in the manner requested in his motion. An appropriate Order follows.

2. The proposed amendment states as follows: KP [Kirk Pendleton], as acting CEO of FWR [Fort Washington Resources], knew before and on or after June of 1992 that the License Agreement between [Fort Washington Resources] and Resource Corporate Technologies and the Amendment thereto provided that the IND application be filed by April 15, 1993 and he intentionally misrepresented this material fact to RHT [Robert H. Tannen] at the time [Robert H. Tannen] and [Kirk Pendleton] and commenced negotiations for the purpose of inducing [Robert H. Tannen] to act and rely resulting in injury damage.

*ORDER*

AND NOW, this 23rd day of February, 1994, upon consideration of the second motion of defendant to amend his complaint (counterclaim) pursuant to Rules 13(f) and 15(a) of the Federal Rules of Civil Procedure, and all responses thereto, it is hereby ORDERED:

1) that defendant's motion is DENIED IN PART with respect to his request to add a counterclaim to state a claim for piercing the corporate veil;

2) that defendant's motion is GRANTED IN PART with respect to his request to amend his claims for fraudulent and negligent misrepresentation in the manner specified in the motion;

3) that plaintiff and Mr. Pendleton's cross-motion for sanctions is DENIED;

4) It is further ORDERED that defendant has ten (10) days from the entry date of this Order to amend his counterclaims in compliance with this Order.